NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SCOTT COULSON and JOHN** | : | |
| **(a/k/a JACK) PETTIGREW,** | : | |
| | : | **Civil Action No. 07-5893 (PGS)** |
| **Plaintiffs,** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TOWN OF KEARNY and CHIEF** | : | **OPINION** |
| **JOSEPH LAPSANSKI (retired),** | : | |
| **invididually and as Chief of Kearny** | : | |
| **Fire Department,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

Pending before this Court is a Motion by Plaintiffs Scott Coulson and John Pettigrew ("Plaintiffs") to amend their Complaint to add one new defendant and new factual allegations based upon information Plaintiffs obtained during written discovery. (Docket Entry No. 18). Having considered the parties' submissions, the Court **GRANTS** the motion in part and **DENIES** the motion in part.

## I.    PROCEDURAL BACKGROUND

Plaintiffs instituted this lawsuit against Defendants Town of Kearny and Chief Joseph Lapsanski, individually and as Chief of the Kearny Fire Department (the "Defendants") on December 10, 2007 alleging violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the New Jersey Law Against Discrimination ("LAD"). (Docket Entry No.1, the "Complaint"). The Complaint alleges four counts: Count One, Violation of USERRA, Count Two, Armed Forces Discrimination, Count Three, Hostile Work Environment, and Count Four,

Retaliation.  (Docket Entry No. 1).  Counts Two, Three and Four are alleged violations of LAD. (*Id.*).  Defendants answered the Complaint on March 5, 2008.  (Docket Entry No. 8).

Starting in November 2008, the parties contacted the Court on numerous occasions for assistance in resolving discovery disputes.[1]  Most recently, on May 29, 2009, the Court held oral argument and ruled with regard to some of those disputes.  Moreover, on September 18, 2009, the parties again informed the Court that there were subsequent discovery disputes.  Due to these disputes, the Court has entered three scheduling orders over the course of discovery, the most recent of which was signed on June 8, 2009.  (Docket Entry No. 17, "June 8 Scheduling Order").  In the June 8 Scheduling Order, the Court set October 1, 2009 as the deadline for fact discovery and July 1, 2009 as the deadline to add new parties or amend the complaint.  (*Id.*).  No trial date has been set. By letter order dated October 2, 2009, the Court stayed fact and expert discovery deadlines in the June 8 Scheduling Order.  (Docket Entry No. 24).

Plaintiffs filed the instant motion on July 2, 2009 at 1:03 a.m., prior to the end of fact discovery, seeking to add one defendant, Joseph O. D'Arco, the Business Administrator for Defendant Town of Kearny ("D'Arco") and more factual allegations to boost the claims against the current Defendants.  *See* Memorandum of Law in Support of Plaintiffs' Motion to Amend the Complaint ("Pl. Memo of Law") at 2.  Plaintiffs claim that the new factual allegations are based on information gleaned during written discovery, including internal memorandum between D'Arco and the former and current Chiefs of the Fire Department relating to Plaintiffs' military orders.  *See id*. at 2-3.  Plaintiffs also seek to add D'Arco as a defendant because he was responsible for overseeing

---

[1]  As a general practice in each matter, the Court maintains a case journal.  The information in the above background was obtained from the Court's notes in that journal.

the Fire Department and for carrying out the Town's policies and procedures.  *See id*.  Finally, Plaintiffs claim that, through written discovery, they discovered that D'Arco created new military leave request forms in violation of USERRA.  *Id.* at 5-6.

Defendants oppose the addition of Defendant D'Arco on futility and delay grounds, but do not address the additional factual allegations.  Therefore, as it pertains to the new factual allegations, Plaintiffs' motion is granted.  The Court will evaluate the addition of D'Arco as a defendant against the equitable and legal considerations underpinning Fed. R. Civ. P. 15(a).

## II.     FACTUAL ALLEGATIONS

Taking the allegations in the Complaint as true, Plaintiffs are employees with the Fire Department of Defendant Town of Kearny ("The Town").   (Complaint at ¶¶ 2, 3).  Plaintiff Jack Pettigrew ("Pettigrew") is a member of the New Jersey State Militia and a member of the United States Navy.  (*Id.* at ¶ 1).  He joined the United States Navy Reserve in 1996 and holds the rank of Chief Petty Officer.  (*Id.* at ¶ 2).   He has been employed as a firefighter with the Town of Kearny for over twenty years.  (*Id.*).  Plaintiff Scott Coulson ("Coulson") is a member of the United States Air Force since 1990.  (*Id.* at ¶ 3).  He has been employed with the Kearny Fire Department since July 17, 1996.  (*Id.*).

Defendant Joseph Lapsanski ("Lapsanski") was, until May 31, 2007, the Fire Chief for the Kearny Fire Department and allegedly had supervisory authority and direct responsibility and control over the Plaintiffs.  (*Id.* at ¶ 6).  Proposed Defendant Joseph D'Arco ("D'Arco") is the Business Administrator of the Town of Kearny and is in charge of overseeing all Town departments, as well as carrying out the policies enacted by the Mayor and Town Council.  *See* Certification of Clayton Giles, Esq., Exhibit A ("Proposed Amended Complaint") at ¶ 7.

Prior to his joining the United States Navy Reserves, Pettigrew claims that he did not experience discrimination or harassment during his employment. (Complaint at ¶ 9). After joining the United States Navy Reserves, however, Pettigrew alleges that he began to experience harassment and retaliation based upon his military obligations, status and service. (*Id.* at ¶¶ 9, 10). For example, Pettigrew alleges that the Deputy Chief demanded copies of his Orders upon his return from drill weekends (with the knowledge that the Navy did not issue Orders for drill weekends) and production of his Naval Unit's Plan of the Month as verification. (*Id.* at ¶ 10). As another example, in December 2000, Pettigrew was selected to be a member of the Presidential Inauguration Unit and received fifty-six days of active duty. (*Id.* at ¶ 11). After submission of these orders, Pettigrew alleges that a Fire Chief ordered him to have his Orders rescinded or else he would be charged for excessive absenteeism. (*Id.*). Pettigrew also claims that Defendant Lapsanski has threatened Pettigrew's job. (*Id.* at ¶ 23).

Plaintiff Coulson makes similar claims of Defendants' alleged discrimination and harassment. For example, on September 26, 2003, Coulson alleges that he submitted papers for military leave which Lapsanski approved and forwarded to the Town Clerk. (*Id.* at ¶ 28). Coulson claims that Lapsanksi then ordered Coulson into his office in November 2003 and ordered him to submit a second Leave of Absence form so that he could "disapprove it." (*Id.*) Lapsanksi allegedly implied that if Coulson did not resubmit the new form, he would be disciplined. (*Id.*). Lapsanski also refused to allow Coulson to attend drill weekends unless he first provided written Orders. (*Id.* at ¶ 29). Coulson alleges that, despite his efforts to meet his demands, Lapsanski failed to submit certain military leave of absence forms to the Town Council. (*Id.* at 32). All of the above allegations (and others) form the basis of the USERRA and LAD claims.

-4-

## III.   LEGAL ANALYSIS

Fed. R. Civ. P. 15(a) allows a party to amend its pleading by leave of court when justice so requires.  Leave to amend pleadings is to be freely given.  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The decision to grant leave to amend rests within the discretion of the court.  *Foman*, 371 U.S. at 182.  Pursuant to *Foman*, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment.  *Id.*  "Only when these factors suggest that amendment would be 'unjust' should the court deny leave."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (internal citations omitted).

Here, Defendants are opposing Plaintiffs' Motion on the basis of undue delay and futility of the proposed amendment.  These arguments will be addressed in turn.

### A.   Undue Delay

With respect to undue delay, Defendants argue that the Proposed Complaint is not based on newly discovered information, but rather documents that Defendants produced on September 10, 2008, nine months prior to the filing of the instant motion.  *See* Defendants' Brief in Opposition to Plaintiffs' Motion to Amend Their Complaint ("Def. Memo of Law") at 9.  Defendants further argue that the time to add additional parties expired under three separate scheduling orders.  *Id.*  In fact, Defendants argue that because Plaintiffs filed their motion on July 2, 2009 at 1:03 a.m., one hour and three minutes past the deadline in June 8 Scheduling Order, the Court should consider the motion untimely.  *Id.* at 10-11.  Finally, Defendants argue they will be prejudiced if the motion to amend is granted because the amendment will "punish" the Defendants for following the Court's scheduling

orders while rewarding the Plaintiffs.  *Id.* at 10.

As a preliminary matter, the Court notes that there is no presumptive period in which a motion for leave to amend is deemed "timely" or in which delay becomes "undue."  In *Arthur v. Maersk*, the Third Circuit found that a period of eleven months from commencement of an action to the filing of a motion to amend was not, on its face, so excessive as to be presumptively unreasonable.  434 F.3d at 205.  Likewise, Plaintiffs' act of waiting a year and a half from the filing of the Original Complaint to seek leave to amend will not be deemed presumptively unreasonable.

In determining whether the instant motion was the result of undue delay, this Court must examine Plaintiffs' reasons for not moving to amend sooner.  *AstraZeneca AB v. Ranbaxy Pharms., Inc.*, No. 05-5553, 2008 U.S. Dist. LEXIS 102097, at *21 (D.N.J. Dec. 15, 2008).  Plaintiffs attribute the instant delay to the numerous discovery disputes that have plagued this case, including "gross deficiencies in Defendants' responses" to Plaintiffs' Interrogatories that the parties could not resolve without the assistance of the Court.  Memorandum of Law in Reply to Defendants' Opposition to Plaintiffs' Motion to Amend the Complaint ("Pl. Reply") at 2.   Review of the procedural history of this matter supports Plaintiffs' contention that numerous discovery disputes occurred causing delay in this matter.  In fact, although Defendants state that Plaintiffs received the documents utilized in the Proposed Amended Complaint in September 2008, Plaintiffs have explained that the production was in no discernible order, containing numerous duplicative documents.  *See* Pl. Reply at 3. Plaintiffs also explain that they were unable to amend the Complaint until the deficiencies in Defendants' responses to discovery were resolved.  *See* Pl. Reply at 4.  This resolution occurred at oral argument on May 29,  2009, just one month prior to the filing of this motion.  *See* Pl. Reply at 6.  Therefore, Plaintiffs have demonstrated good cause for the amount of time it took to file the

-6-

instant motion.

Moreover, delay alone does not justify denying a motion to amend. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, only when the delay places an unwarranted burden on the court or on the opposing party is a denial on the basis of delay appropriate. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

Here, Defendants fail to advance a single piece of evidence to demonstrate that the amendment would be prejudicial. Instead, Defendants merely state in a conclusory fashion that it will be prejudiced if leave is granted because Defendants followed the scheduling orders and Plaintiffs allegedly did not. *See* Def. Memo of Law at 10. There is no evidence that Plaintiffs did not follow the scheduling orders and Defendants do not shed light on how the amendment will be prejudicial. At the time of the filing of the instant motion, discovery was not set to end for another three months. *See* June 8 Scheduling Order. Although Defendants spend much of their opposition chastising the Plaintiffs for failing to take any depositions, Defendants omit the fact that the parties had been dealing with discovery disputes and that fact discovery was ongoing. Moreover, Plaintiffs have proffered a reasonable explanation for the delay and are not guilty of repeated failures to cure deficiencies by previous amendments since this is Plaintiffs' first attempt to amend its Complaint. *Sullivan v. W.N.Y. Residential, Inc.*, No. 01-7847, 2003 U.S. Dist. LEXIS 6498, at *4 (E.D.N.Y. Mar. 4, 2003).

Finally, Defendants argue that because Plaintiffs filed their motion on July 2, 2009, one day

after the deadline in the June 8 Scheduling Order, that this Court should apply the heightened requirement of Fed. R. Civ. P. 16(b) to determine whether the June 8 Scheduling Order should be modified, in addition to the standard for amending a complaint set forth in Fed. R. Civ. P. 15.  *See* Def. Memo of Law at 11.  Fed. R. Civ. P. 16(b)(4) provides that "a schedule may be modified only for good cause and with the judge's consent."  In support of this argument, Defendants cite to *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) where the Court denied a motion to amend due to delay because the amendment would require a reopening of discovery, on the eve of trial, and the movant failed to provide an explanation for the delay.  Here, however, the amendment would not require a reopening of discovery, a trial date has not been set and the Plaintiff has reasonably explained the delay.

Moreover, Defendants' argument is disingenuous as, once again, facts critical to this Court's determination have been omitted.  In reality, Plaintiffs filed the instant motion on July 2, 2009 at 1:03 a.m., 63 minutes past July 1, 2009 deadline.  *See* Reply Br. at 12.  Plaintiffs proffered a reasonable explanation that the 63 minute delay was attributed to equipment failure which occurred when Plaintiffs attempted to scan and upload the moving papers to the Court's electronic filing system. *Id*. at 12-13.  While waiting until the last possible moment to file the moving papers is not ideal, the Court finds good cause to permit a 63 minute extension of the deadline to file motions to amend and add parties to the June 8 Scheduling Order.  Defendants have failed to demonstrate the prejudice caused by the 63 minute delay.

Therefore, the Motion to Amend will not be denied on the basis of undue delay or prejudice.

**B.     Futility**

The Court next considers Defendants' futility argument.  An amendment is considered futile

if it advances a claim or defense that is legally insufficient on its face.  Courts may properly deny a motion to amend when the amendment would not withstand a motion to dismiss.  *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).  Under Fed. R. Civ. P. 12(b)(6), dismissal should not be ordered "unless it appears beyond doubt that the [party asserting the claim] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants argue that the amended complaint fails to allege facts to support a claim for individual liability against D'Arco under either LAD or USERRA.

## I.     LAD

LAD provides that it is unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." *Hurley v. Atlantic City Police Department* 174 F.3d 95, 126 (3d. Cir. 1999) (citing *N.J.S.A.* 10:5-12(e)).  As interpreted by the Third Circuit and the New Jersey Supreme Court, LAD "does not provide for direct individual supervisory liability; rather, a supervisor may only be held liable for aiding or abetting an employer's unlawful employment action." *Danna v. Truevance Management, Inc.*, Civil Action No. 05-cv-5395, 2007 WL 2156361 at *2 (D.N.J. July 25, 2007); *see also Cicchetti v. Morris County Sheriff's Office*, 194 N.J. 563, 594 (2008) (holding that "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile work environment can only arise through the aiding and abetting mechanism that applies to any person") (internal citations omitted).

In *Tarr v. Ciasulli*, 181 N.J. 70 (2004), the New Jersey Supreme Court addressed the definition of aiding and abetting under LAD.  There, the Court found that "in order to hold an

employee liable as an aider and abettor, a plaintiff must show (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Id.* at 84 (internal citations omitted). Moreover, the Third Circuit in *Hurley* also recognized a second and "somewhat awkward theory of liability" where a supervisor can be held liable for his or her own harassing acts, in another form of aiding and abetting. 174 F.3d at 126. The Court stated that "[a] supervisor, under New Jersey law, has a duty to act against harassment. This duty can be violated by deliberate indifference or affirmatively harassing acts. When a supervisor flouts this duty, he subjects himself and his employer to liability." *Id*. at 126.

While the Proposed Complaint sets forth three counts (Counts Two, Three and Four) pursuant to LAD, the Defendants' arguments do not distinguish amongst the counts and argue generally about D'Arco's potential liability under LAD. Defendants argue that Plaintiffs fail to allege that D'Arco aided and abetted in the allegedly wrongful conduct against Plaintiffs. Def. Memo of Law at 6. Instead, Defendants contend that D'Arco's conduct pled by Plaintiffs was merely consistent with carrying out his duties as Town Administrator. *Id.* at 7. This conduct, as pled by Plaintiffs, included assisting the Mayor and Council in formulating policies, advising the Fire Chief that he could consider the impact of Pettigrew's military leave orders, distributing a Military Leave form and miscalculating military leave deductions from payroll. *Id.* at 6. Therefore, Defendants argue that the above actions do not rise to the level of aiding and abetting. *Id.* at 7.

This Court finds, however, that Plaintiffs have set forth sufficient allegations of D'Arco aiding and abetting Defendants to satisfy the requirements of Fed. R. Civ. P. 12(b)(6). First,

Plaintiffs have alleged that D'Arco, as the Business Administrator is charged with overseeing all Town departments and for carrying out policies enacted by the Mayor and Town Council, thus alleging that D'Arco was a supervisor who could be held liable for aiding and abetting. (*See* Proposed Amended Complaint at ¶ 7). Defendants have not disputed that D'Arco held a supervisory role. Second, Plaintiffs allege that D'Arco sent a memo to the Fire Chief, in contravention of law, acknowledging his receipt of Pettigrew's military orders and letting the Fire Chief know that he must "assess the adverse impact" prior to authorizing Pettigrew's leave. (*See id.* at ¶ 14). This allegation demonstrates an example of D'Arco's alleged wrongful and discriminatory acts. Third, Plaintiffs allege that D'Arco directed Defendant Lapsanski to utilize a new Military Leave Certified Confirmation of Duty form after D'Arco received an official fact sheet which stated that under USERRA, an employer <u>cannot</u> require an employee to apply for military leave or to submit official documentation. (*See id.* at ¶¶  19, 26) (emphasis added). This allegation sufficiently alleges D'Arco's knowledge of the wrongdoing. Finally, Plaintiffs allege that requiring them to fill out the allegedly illegal forms created by D'Arco has added to the hostile work environment, harassment and retaliation. (*See id.* at ¶¶ 24, 26).

Plaintiffs have sufficiently alleged that not only did Defendants Lapsanski and the Town of Kearny violate LAD but that D'Arco's actions assisted in those alleged violations and that D'Arco knew of those violations. Therefore, Plaintiffs' motion to amend to add D'Arco as a Defendant with respect to the LAD claims (Counts Two, Three and Four) is granted.

    **ii.**    **USERRA**

USERRA provides that "[a]n employer may not discriminate in employment against or take any adverse employment action" against an employee that is a member of the uniformed services.

38 U.S.C.A. § 4311(b).  The statute defines "employer" as a "person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities including a person...to whom the employer has delegated the performance of employment-related responsibilities."  38 U.S.C.A. § 4303(4)(A)(I).

In considering liability under USERRA, "[c]ourts have recognized that USERRA applies only to employers, or those individuals who have the power to hire or fire the employee." *Brooks v. Fiore*, No. 00-803, 2001 WL 1218448, at *9, n.3 (D.Del. Oct. 11, 2001); *see also Satterfield v. Borough of Schuykill Haven*, 12 F.Supp.2d 423, 438 (E.D.P.A. 1998) (finding that because plaintiff did not report to any of the defendants individually and defendants did not have individual power over the plaintiff, defendants were not "employers" within the meaning of the statute); *Jones v. Wolf Camera, Inc.*, No. 3:96-CV-2578, 1997 WL 22678, at *2 (N.D.Tex. Jan. 10, 1997) (denying motion to dismiss because plaintiff had alleged the individual defendants had absolute authority with respect to hiring and firing).

Defendants urge that because the statute provides only for employer liability or those individuals who have the power to hire or fire the employee, D'Arco is precluded because he has no independent authority to hire and fire.  Def. Memo of Law at 8.   Plaintiffs do not refute this argument.

The Proposed Amended Complaint does not allege that D'Arco had the power to hire or fire either Plaintiff.  Furthermore, although Plaintiffs generally allege that Defendants improperly calculated deductions from Plaintiffs' paychecks, Plaintiffs do not specifically allege that it was done by D'Arco himself, nor does it allege that he had the authority and power to do so. (*See* Proposed Amended Complaint at ¶¶ 40-46)**.**   Therefore, Plaintiffs have failed to sustain the pleading

-12-

requirements for D'Arco with regard to the USERRA claim and this portion of Plaintiffs' motion to amend will be denied.

**IV .    CONCLUSION**

For the reasons set forth above, the Court grants Plaintiffs' Motion to Amend the Complaint in part and denies in part.   The Court will issue an appropriate Order.

s/ Esther Salas

**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**